JUDGE FAILLA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

HCC LIFE INSURANCE COMPANY,

Petitioner,

v.

MARC AGULNICK, MD, BENJAMIN COHEN, MD, and ARTEM VAYNMAN, MD,

Respondents.

---------------------------------------------------------------x

14 CV 5526

Civil No.

RECEIVED
JUL 22 2014
U.S.D.C. S.D. N.Y.
CASHIERS

---------------------------------------------------------------x

In the Matter of the Arbitration Between

WINTHROP-UNIVERSITY HOSPITAL,

Claimant,

and

HCC LIFE INSURANCE COMPANY,

Respondent.

---------------------------------------------------------------x

**PETITION TO ENFORCE ARBITRATOR'S SUBPOENAS TO**
**<u>APPEAR AT A HEARING AND FOR PRODUCTION OF DOCUMENTS</u>**

Petitioner HCC Life Insurance Company ("Petitioner" or "HCC") submits this petition to compel compliance with Arbitrator Richard Webb's subpoenas to respondents Marc Agulnick, MD, Benjamin Cohen, MD, and Artem Vaynman, MD ("Respondents") to appear at a hearing and for production of documents.

**PRELIMINARY STATEMENT**

Claimant Winthrop-University Hospital ("Winthrop") commenced an arbitration (the "Arbitration") against HCC in this District in which Winthrop seeks to recover monetary damages against HCC under two stop loss insurance policies covering Winthrop for catastrophic losses on its employee benefit plan. (Higgins aff, exhibit A) During the course of the Arbitration, Arbitrator Richard Webb issued subpoenas to appear at hearing and for production of documents (the "Subpoenas") for Respondents (Higgins aff, exhibits B – D), which was served upon them on June 24, 2014. (Higgin aff, exhibits E – G). The Subpoenas commanded Respondents to appear in person at their scheduled hearing date and time before the Arbitrator on June 7, 2014 or June 8, 2014 and to produce documents set forth in Exhibit "A" to the Subpoenas (Higgins aff, exhibits B – D). Respondents refused to comply with their respective Subpoenas and failed to appear at their scheduled hearings.

The Subpoenas were issued after Respondents failed to comply with earlier subpoenas seeking the same documents sought in the Subpoenas at issue in this petition. The documents and testimony sought in the Subpoenas are material to HCC's defense against Winthrop's claims in the Arbitration. At issue in the Arbitration is whether the medical bills for which Winthrop seeks reimbursement from HCC were reasonable and customary. This petition seeks to compel the Respondents' compliance with the Subpoenas so that HCC can obtain this material information.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Underlying Arbitration

HCC issued two stop loss policies to Winthrop covering Winthrop for catastrophic losses (i.e. claims over $250,000) on its employee benefit plan for the calendar years 2011 and 2012. (Higgins aff, exhibit A). Commencing in early 2011 and continuing through 2012, Winthrop submitted through its self-funded Winthrop-University Hospital Welfare Benefit Plan (the "Plan"), an unprecedented and alarming number of claims for emergency back surgeries for reimbursement to its medical stop-loss insurer, HCC. Over that time period, there were eight surgeries on Plan beneficiaries (four in each year), for which the surgeons' fees totaled $4,839,453.08, an average of $604,931.63 per claim. The surgical fees paid to the surgeons for two of the patients were in excess of $700,000 each. For one, the surgical fees paid to the surgeons exceeded $800,000. In the underlying Arbitration, Winthrop is seeking to collect the amount of each claim in excess of a $250,000 per claim deductible. The total amount of Winthrop's arbitration claim is $2,422,993.29 for the eight claims.

The stop loss policies provide coverage for "Covered Expenses," in excess of a $250,000 per covered person deductible. "Covered Expenses" is defined as:

> Plan Benefits incurred by a Covered Person (or Covered Family):
>
> 1. For which benefits are Paid by the Policyholder under the Employee Benefit Plan, and
> 2. *Which are not in excess of the Reasonable and Customary Charge for those services*, and
> 3. Which are Medically Necessary for the treatment of an illness or injury or for any preventative care covered by the Employee Benefit Plan, and
> 4. *Which are reimbursable under this policy subject to its terms, deductible(s), limitations and exclusions.*

(emphasis supplied).

Reasonable and Customary Charge is defined in pertinent part as:

> Charges for medical expenses, including but not limited to, physician services, … usually made by such providers in the same geographical area using nationally and regionally adjusted data.

The plain terms of the stop loss policies limit coverage to reasonable and customary charges for benefits paid by Winthrop under the Plan. Any amount paid in excess of reasonable and customary charges or which is not paid under the terms of the Plan for the surgical services is not a covered expense.

The stop loss policies also clearly reserve the right for HCC to make all coverage determinations with regard to amounts payable under the policy without regard to any determination Winthrop's third-party administrator, United HealthCare ("UHC"). Paragraph I on page 14 of the stop loss policies provides:

> DISCLAIMER: We act only as insurer to You. We are not a fiduciary or a party in interest to the Employee Benefit Plan or any participant. We do not assume the duty to perform any of the functions of, or to provide any of the reports required by, You by the Employee Retirement Income Security Act of 1974, as amended or by other applicable state or federal law. We assume no responsibility or obligation for the administration of Your Employee Benefit Plan or Your acts. ***We reserve the right to determine amounts payable under this policy without regards to such acts.***
> (emphasis added)

If Winthrop has a disagreement with a coverage determination by HCC which cannot be resolved by the parties, it must resort to the arbitration provision of the stop loss policies to have the matter resolved by a neutral arbitrator, as it has done in the underlying Arbitration.

The central and determinative issues in the Arbitration are: 1) whether the fees paid for the spinal surgeries exceed reasonable and customary charges for the services rendered, and 2) whether the surgeries for the patients admitted to the hospitals through the emergency departments were actual emergency surgeries.

The factual issue of whether the charges exceed reasonable and customary must be determined before there can be any recovery under the stop loss policies. The stop loss policies cover only reasonable and customary medical charges and has a per member deductible of $250,000. The stop loss policy does not cover medical charges that are in excess of reasonable and customary charges for the services rendered.

In addition, the question of whether certain of the surgeries were "emergencies" must be determined by the Arbitrator. Certain of the surgeries at issue were classified as emergencies, allowing the patients to obtain out of network benefits for those surgeries. HCC has questioned whether these surgeries were, in fact, emergencies. If they were not emergencies, there would e no out of network coverage for certain of the surgeries.

Winthrop has alleged that its third-party administrator, UHC, determined that the surgeries classified as emergencies were truly emergent and that the fees charged by the surgeons did not exceed reasonable and customary charges. Thus, in the underlying Arbitration, Winthrop alleges that HCC must reimburse Winthrop for the medical charges it paid under its Plan for the eight surgeries at issue.

**B. The Subpoenas**

Drs. Agulnick, Cohen, and Vaynman were surgeons in six of the eight surgeries involved in the Arbitration. The Subpoenas seek, *inter alia*, their medical records and billing records related to the six patients at issue, as well as their billing and payment records for certain CPT codes for other patients for the period from January 1, 2010 through December 31, 2012 (Higgins aff, exhibits B - D). This information is material to the question of whether the charges which UHC approved and for which Winthrop is seeking reimbursement from HCC were

reasonable and customary. In addition, the doctors can provide testimony and records material to the question of whether the surgeries were emergencies.

## ARGUMENT

### A. Subject Matter Jurisdiction Over this Dispute

This court has subject matter jurisdiction over this dispute based on complete diversity of the parties. Pursuant to 28 U.S.C. § 1332, district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. HCC, which is the petitioner in this action and the respondent in the arbitration, is incorporated in the state of Indiana, while Dr. Agulnick, Dr. Cohen, and Dr. Vaynman, the respondents to this petition, and Winthrop, the claimant in the arbitration, are all residents of New York. In addition, the amount in controversy in the arbitration exceeds $75,000 since Winthrop is claiming damages in excess of $2 million (Higgins aff, exhibit A, ¶ 30).

### B. Personal Jurisdiction Over Respondents

This court has personal jurisdiction over Drs. Agulnick, Cohen and Vaynman. Pursuant to the Federal Rules of Civil Procedure Rule 45, a person served with the subpoena must have been served "within the district" of the court being asked to enforce the subpoena, or served outside the district but within 100 miles of the place specified in the subpoena where the person must attend a hearing or produce documents. In their subpoenas, Drs. Agulnick, Cohen and Vayman were commanded to appear in person at the offices of the American Arbitration Association at 150 E. 42nd Street, 17th Floor, New York, New York. (Higgins aff, exhibits B – D). Dr. Agulnick was served with his subpoena at his medical office located at 600 Old Country Road, Garden City, New York. (Higgins aff, exhibit B). Drs. Cohen and Vaynman were both

served at their medical office at 100 Merrick Road, Suite 128W, Rockville Centre, New York (Higgins aff, exhibits C – D). Garden City and Rockville Center are both within 100 miles of 150 E. 42nd Street, New York, New York.

**C. The Subpoenas Are Valid and Enforceable Under Section 7 Of The FAA**

This Court has the authority, pursuant to Section 7 of the Federal Arbitration Act ("FAA"), to compel Respondents Marc Agulnick, MD, Benjamin Cohen, MD, and Artem Vaynman, MD, to comply with their respective Subpoenas. By enforcing the Subpoenas, the Court will enable HCC and the Arbitrator to obtain highly material evidence to help him determine whether the medical charges at issue were reasonable and customary.

Pursuant to Section 7 of the FAA, arbitrators may "summon in writing *any person* to attend before them or any of them as witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7 (emphasis added). The statute provides that "[s]uch summons shall issue in the name of the arbitrator or arbitrators" and "shall be served in the same manner as subpoenas to appear and testify before the court." *Id.* The statute further provides that:

> [I]f any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

*Id.*

Based upon the plain language of Section 7, Arbitrator Webb has the authority to compel Respondents Marc Agulnick, MD, Benjamin Cohen, MD, and Artem Vaynman, MD to appear before him in the Arbitration to provide testimony and to produce documents and information.

There is no question that the Subpoenas issued by Arbitrator Webb were properly issued and that they were properly served on Respondents.

The FAA and Federal Rules of Civil Procedure authorize an arbitrator to issue a subpoena on "any person" – including a non-party to arbitration – to appear at a pre-hearing deposition and to produce documents *before* the arbitration hearing. Thus, in *Stolt-Nielsen SA, et al. v. Celanese AG, et al.*, 430 F.3d 567 (2nd Cir. 2005), the Second Circuit upheld a pre-hearing subpoena of a non-party to an Arbitration, noting that "the language of Section 7 is broad, limited only by the requirement that the witness be summoned to appear 'before [the arbitrators] or any of them' and that any evidence requested be material to the case." *Stolt-Nielsen* at 578-579 (citing 9 U.S. C. § 7). The *Stolt* court noted that arbitrators may need to hear testimony or receive evidence on preliminary issues in advance of an ultimate hearing on the substantive merits of the underlying claims in the arbitration. *Id.* at 579.

The *Stolt* court also noted the usefulness of employing subpoenas at a preliminary hearing before an arbitration panel. *Id.* at 580. In *Stolt*, there were issues of privilege as to which questions the witness would be permitted to answer. Rather than dealing with "thorny issues of privilege" at the final hearing, the arbitrators subpoenaed the witness for a preliminary session in which those issues could be resolved. *Id.* The preliminary hearing could also have resolved issues of foundation and admissibility in advance of a final hearing. *Id.*

The issue of whether the court can compel compliance with an arbitrator's subpoena seeking discovery of documents from a "third party" before the arbitration hearing also was addressed in *In re Arbitration Between Douglas Brazell v. American Color Graphics, Inc.*, No. M-82, 2000 U.S. Dist. LEXIS 4482 (S.D.N.Y. April 7, 2000). In this decision, the court granted claimants' motion seeking to compel non-party to an arbitration to produce documents identified

in a subpoena *duces tecum.* The court held: "Given its authority under Section 7 of the FAA, the Court directs that [the non-party] produce the documents that are encompassed by the subpoena issued by the arbitrator." *Id.* at 3. The court further declared that "given [the court's] limited contact with the issues involved in the [arbitration] proceeding, the Court should not disturb the arbitrator's determination that the documents were relevant." *Id.*

The judge in *Brazell, supra*, noted that his holding was consistent with a number of decisions outside this District. *See, e.g., Stanton v. Paine Webber Jackson & Curtis, Inc.*, 685 F. Supp. 1241, 1242-43 (S.D. Fla. 1988) (arbitrators may order and conduct such discovery as they find necessary, including the issuance of subpoenas compelling third parties to appear at pre-hearing depositions and to produce documents); *Meadows Indemnity Co., Ltd. v. Nutmeg Insurance Co*., 156 F.R.D. 42 (M.D. Tenn. 1994) (the district court enforced an arbitrator-issued subpoena *duces tecum* compelling a non-party to the arbitration to produce documents which the arbitrator had determined that were relevant to the arbitration, and that there was no reason for the court to second guess this determination).

In the instant case, Arbitrator Webb was authorized under Section 7 of the FAA to issue the subpoena to Respondents Marc Agulnick, MD, Benjamin Cohen, MD, and Artem Vaynman, MD. The information sought in the Subpoenas is material to a central issue in the Arbitration – namely, whether the charges were reasonable and customary. Since one or more of the physicians summoned in the Subpoenas may contest whether he must appear and provide the documents requested, it makes sense to deal with these "thorny issues" at a preliminary hearing, rather at the final Arbitration hearing. In short, the Subpoenas are valid and enforceable, and this Court – pursuant to the FAA and Rule 45 of the Federal Rules of Civil Procedure – should enforce the Subpoenas and issue an order compelling Respondents Marc Agulnick, MD,

Benjamin Cohen, MD, and Artem Vaynman, MD to comply fully with their respective Subpoenas.[1]

**CONCLUSION**

Based upon the foregoing, the Court should grant HCC's petition and issue an order: (a) compelling Respondents Marc Agulnick, MD, Benjamin Cohen, MD, and Artem Vaynman, MD to comply fully with the Subpoena and (b) directing Respondents Marc Agulnick, MD, Benjamin Cohen, MD, and Artem Vaynman, MD to appear for a hearing before Arbitrator Webb and to produce the documents that are in their custody and control set forth in the attachment to their respective Subpoenas.

Dated:
New York, New York

D'AMATO & LYNCH LLP

By: ______________________
JOHN P. HIGGINS
Attorney for Petitioner-Respondent
HCC LIFE INSURANCE COMPANY

---

[1] Full compliance with the Subpoena requires production of all responsive documents in the witness' "custody or control," including without limitation, any responsive documents in the office of his attorney or other similar persons.